PULSIFER and others *against* HOTCHKISS and others.

In an action on a bill or note, the defendant cannot shew a partial failure of consideration to reduce the damages, if the *quantum* to be deducted, on account of such partial failure, is not of definite computation, but of unliquidated damages, and there has been no attempt to repudiate the contract or restore the consideration.

Therefore, where *A* had sold an interest in a patent-right to *B.*, accompanied with a false representation; and the interest thus sold was of some value, but of less value than it would have been, if the representation had been true, but the difference was of an uncertain and unliquidated amount, and *B* did not repudiate the contract, nor offer to restore the interest sold; in an action on a promissory note given by *B* to *A* for such interest, it was held, that *B* could not avail himself of such partial failure of consideration to reduce the damages below the sum expressed in the note.

THIS was an action of *assumpsit* against the defendants, as the makers of a promissory note.

The cause was tried, upon the general issue, at *New-Haven, January* term, 1837, before *Church,* J.

On the trial, the execution of the note was admitted, and that it was given in consideration of a horse wagon and machine, of the value of 270 dollars, and also in consideration of the assignment of the exclusive right of using, and vending to be used, a certain patent machine, within the counties of *Litchfield* and *Fairfield* in this state. It was also admitted, that the patent was a valid one; and that the invention thereby se-

New-Haven, July, 1837.

Puldifer v. Hotchkiss.

cured was new and useful. But the defendants claimed, and offered evidence to support their claim, that at the time of the assignment, the plaintiffs, to induce the defendants to purchase the right and pay a large sum of money for it, falsely and fraudulently represented to the defendants, that good machines of the kind contemplated in the patent, could be procured in the state of *Connecticut*, for the price of 105 dollars, each ; whereas in fact, such machines could not be procured for that price, nor for a less price than 150 dollars, each ; and that the defendants were induced to purchase the right, and to pay a large sum for it, solely by such fraudulent representations of the plaintiffs. The defendants therefore claimed, that the court should charge the jury, that if they should find these facts, and that by reason of the falsity of such representations, the right was of no value, or of less value than the price secured by the note given for it, they would be at liberty to consider and estimate the actual value of the right, (if any) and deduct from the note as much as, in their opinion, the sum agreed to be paid and included in the note, exceeded the actual value.

The plaintiffs denied the fraud, and claimed, that the right was of the full value of the sum agreed to be paid for it ; and there being no evidence that the contract had ever been rescinded, or that the defendant had ever offered to give up the assignment, or to return said right to the plaintiffs, or to refund any part of the consideration of the note, the court ought to charge the jury, that unless they should find the fraudulent representations proved, as claimed by the defendants, and that by reason of the falsity thereof, said right was of no value whatever to the defendants, they were not at liberty, in this action, to estimate the value of such right, or to take into consideration any partial failure in the consideration of the note, to an unliquidated amount.

The court charged the jury, that if they should find, that the defendants had veen induced to purchase said right, and to pay for it at the price agreed, by reason of the fraudulent representations of the plaintiffs; and that if, by reason of the falsity of such representations, said right was of no value to the defendants; the plaintiffs, in such case, would not be entitled to receive any more upon the note than the value of the horse-wagon and machine, with interest: But that if they should find, that said right was of some value to the defend-

*New-Haven,*
July, 1837.

Pulsifer
*v.*
Hotchkiss.

ants; inasmuch as the contract had never been rescinded, and no offer had ever been made, by the defendants, to surrender or give up any part of the consideration of the note; and as the partial failure in the consideration of the note (if any) was necessarily of an uncertain and unliquidated amount; it would be their duty to return their verdict for the plaintiffs, to recover the full amount due on the note, with interest.

The jury, accordingly, returned a verdict for the plaintiffs, to recover the full amount secured by the note, with interest; and the defendants thereupon moved for a new trial, for a misdirection.

*Baldwin,* in support of the motion, contended, 1. That a partial failure of consideration may be shewn to reduce the damages. *Cook* v. *Mix,* 11 *Conn. Rep.* 432. 438, 9. and the cases cited by *Bissell,* J. *ibid.*

2. That this may be shown where the damages are *unliquidated. Lomi* v. *Tucker,* 4 *Carr. & Payne,* 15. (19 *Serg. & Lowb.* 255.) *Germaine* v. *Burton,* 3 *Stark. Ca.* 34. and note. (14 *Serg. & Lowb.* 152.) *De Sewhanberg* v. *Buchanan,* 5 *Carr. & Payne,* 343. (24 *Serg. & Lowb.* 352.)

3. That a fraudulent representation is put upon the same footing, in this respect, as a sale with warranty. *Street* v. *Blay,* 2 *Barn. & Adol.* 456. (22 *Serg. & Lowb.* 122.) *Miller* v. *Smith,* 1 *Mason,* 437.

*Kimberly,* contra, contended, That in an action on a bill or note, a partial failure of consideration to an unliquidated amount, cannot be shewn, as a defence, or to reduce the damages, unless there was a warranty, or there has been an offer to rescind the contract and to return the consideration received. *Bailey on Bills,* 537. (late ed.) *Solomon* v. *Turner,* 1 *Stark. Ca.* 51. *Morgan* v. *Richardson,* 1 *Campb.* 40. n. *Tye* v. *Gwynne,* 2 *Campb.* 346. *Lewis* v. *Cosgrave,* 2 *Taun.* 2. *Archer* v. *Bamford,* 3 *Stark. Ca.* 175. (14 *Serg. & Lowb.* 176. b.) *Moggridge* v. *Jones,* 14 *East* 486. *Roscoe on Ev.* 168. *Day* & al. v. *Nix,* 9 *J. B. Moore,* 159. (17 *Serg. & Lowb.* 363.) *Thornton* v. *Wynn,* 12 *Wheat.* 184. 193. *Howard* v. *Witham* & al. 2 *Greenl.* 390. Here, the misrepresentation did not go to the whole consideration; the amount by which the thing sold was reduced in value below the stipulated price, was unliquidated, and not ascertainable by any

given rule ; there was no warranty ; there has been no offer to rescind the contract, but it remains open ; and there has been no offer to return the right, but the defendants still retain it.

*New-Haven*,
July, 1837.

Pulsifer
*v.*
Hotchkiss.

CHURCH, J.   Perhaps our law has undergone no more essential revolution in any respect, than in regard to promissory notes.   From the earliest history of our jurisprudence, down to *October*, 1811, all promissory notes, except such as were made payable at banks and to insurance companies, whatever their form, were considered as specialties, and not negotiable or assignable according to the custom of merchants.   1 *Sw. Syst.* 393.   *Sw. Ev.* 339.   1 *Sw. Dig.* 189. 429.   At the *October* session of the General Assembly, 1811, an act was passed, making all promissory notes, to the amount of thirty-five dollars or more, for the payment of money only, and made payable to order, or bearer, negotiable.   All such notes, therefore, by the rules of the *English* law, became simple contracts; and should have been made subject to the principles of that law applicable to such contracts.   And so our courts considered it, in the cases *of Slocum* v. *Sanford,* 2 *Conn. Rep.* 533, and *Lawrence* v. *Stonington Bank,* 6 *Conn. Rep.* 525.   In regard, however, to notes not negotiable, if they contained an express promise, for value received, they were still considered as subject to the old rules, and so far specialties, as that their consideration could not be enquired into.   *Edgerton* v. *Edgerton,* 8 *Conn. Rep.* 6.   Finally, in the case of *Barnum* v. *Barnum,* 9 *Conn. Rep.* 242. the common law distinctions between specialties and simple contracts were adopted here, in their application to promissory notes :   so that now it may be considered as the settled law of the state, that unsealed promissory notes, whether negotiable or not, are, in all respects, as between the parties to them, to be treated as simple contracts ; and that their consideration is the subject of investigation and denial, totally or *pro tanto.*   Such a result was desirable, if not alone for the sake of principle, at least as a matter of convenience to our own citizens, as well as to those of other states, in rendering our laws on a species of contract more common and universal, in this country, perhaps than any other, more conformable to what is believed to be the law, not only of *England,* but of almost every state in this Union.   And it is equally desirable, that this conformity be preserved, in all respects, relating to promissory notes, if it can be done, without a depar-

*New-Haven,*
*July, 1837.*

*Pulsifer*
*v.*
*Hotchkiss.*

ture from correct principle. The case under advisement has been considered by us, with some reference to these considerations, as well as in view of what we believe to be the reasonable and now settled doctrines in this country and *England.*

From the facts disclosed in this motion, it appears, that the defendants claim to reduce the damages recoverable upon the note in suit, by shewing that the plaintiffs, in the sale of the patent-right, which constituted the chief and yet a distinct part of the consideration of the note, were guilty of a fraud, which destroyed, either totally or partially, the benefits of the defendants' purchase. And connected with this, it appears, that the defendants have never sought to annul the contract, but have continued to retain the purchased right, and all the advantages of the bargain, if any there are, and insist upon all the future profits, if any there shall be.

The court instructed the jury, that if they should find the purchased right was of no value, the plaintiffs were not entitled to recover any thing for it, in this action, but would only recover the value of the other articles sold. No complaint is made of this part of the charge. But it is claimed, that the court should have charged, that if the patent-right was of some value to the defendants, though not of the full value estimated and included in the note; yet the plaintiffs were not entitled to recover the whole amount of the note, but only so much as the jury might estimate the value of the right to be, in addition to the value of the other articles.

If the defendants had repudiated the contract, upon discovering the fraud, and had offered to restore the consideration, such as it was, to the plaintiffs ; or if there being no fraud, the partial failure of the consideration of the note had been of a sum liquidated, or capable of liquidation, by any known rule, the defendants' claim could not be resisted. But neither of these ingredients can be found in the case.

It was formerly holden, in *England,* and in conformity, in this state also, that a partial fraud in a contract could not be given in evidence in mitigation of damages in an action upon the contract ; but that the party defrauded must resort to his action for his remedy. But now it is considered, not only in *England* and in our sister states, and here also, that such partial fraud is a subject of consideration, in an action upon a note or other contract. And it is a subject of enquiry now, under

New-Haven,
July, 1837.

Pulsifer
v.
Hotchkiss.

what circumstances such partial fraud may be given in evidence.

In the case of *Archer* v. *Bamford*, 3 *Stark. Ca.* 175., which was an action against an acceptor of a bill of exchange, by an indorsee privy to the fraud, and wherein the consideration had not wholly failed, and in which case the defence was, that the defendant had been imposed upon in the contract, in respect of which the acceptance was given ; *Abbott,* C. J. said : " That inasmuch as the defendant had not repudiated the contract, but had retained the possession of part of the premises ; and as, consequently, the consideration had not wholly failed ; it was impossible to say, the bill was utterly void. The defendant had no doubt been imposed upon ; and if he had repudiated the contract, he might probably have resisted the present action ; but as he had taken a different course, by adhering to the contract, he could not make any efficient defence in a court of law." And the jury, under the advice of the court, found a verdict for the whole amount of the bill of exchange and interest. And although it is said, that a new trial was afterwards granted in that case, it was not upon any principle inconsistent with the principle above recited, but upon the ground that as the defendant *had actually paid* more than the value of the property retained by him, there was in fact *no consideration* for the acceptance remaining. Mr. *Chitty,* in his treatise on *Bills, page* 72. says, that " where the bill is given for the price of goods *fraudulently* sold under a warranty, the breach of warranty is a bar to an action on the bill, if the defendant immediately, on discovering the fraud, repudiate the contract, by tendering back the goods." And the supreme court of the state of *New-York,* in the case of *Burton* v. *Stewart,* 3 *Wend.* 236. say, " there is no reason why the same doctrine should not be applied to a fraudulent sale where there is no express warranty." And we entertain the same opinion.

The case of *Burton* v. *Stewart* cannot well be distinguished from the present. That was an action upon a note, given by the defendants, to the plaintiff, for the price of a mare. The defence was, that the plaintiff was guilty of a deceit in the sale ; and that the mare had the poll-evil, which rendered her of *no value.* But the defendant had never offered to return her. The judge at the circuit charged the jury, that if the mare was entirely worthless, at the time of the sale, they

*New-Haven,*
*July, 1837.*

Pulsifer
*v.*
Hotchkiss.

should find for the defendants ; but if of some value, they must disregard the evidence offered by the defendants, and find for the plaintiff. The jury found for the plaintiff to recover the full amount of the note. Precisely such was the charge and the result, in the present case. The court, in that case, on the motion for a new trial, recognize the doctrine now claimed by the plaintiffs, here; which is, that fraud in the sale of a chattel cannot be set up in bar of a recovery of a note given on such sale, unless the vendee, on the discovery of the fraud, return the article purchased to the vendor, or show it to be entirely destitute of value.

The supreme court of the *United States,* in the case of *Thornton* v. *Wynn,* 12 *Wheat.* 183. say : "But if the sale be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open, and the vendee is put to his action upon the warranty, unless it be proved, that *the vendor knew* of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time." The same principle is recognized in *Lewis* v. *Cosgrave,* 2 *Taun.* 2. *Reab* v. *McAllister,* 8 *Wend.* 125. 3 *Hammond's Ohio Rep.* 285.; and is very clearly stated, in *Byles on Bills of Exchange,* a very late treatise, *page* 65. We think this doctrine reasonable ; for a plaintiff, in coming to trial on a bill or note, cannot be supposed to anticipate that the defendant, while he retains the benefits of an unrescinded contract, will insist, that it is void, or even voidable. If the defendant can be permitted to prove, that any part of an entire consideration is fraudulent, he proves the whole contract founded thereon to be at least voidable ; and he ought not to be permitted to treat the contract as valid and subsisting, for one purpose, while he seeks to avoid its obligations, for another. He should be put to his election, and either treat the contract as good and pay his note, or avoid it, by restoring the consideration, if any there be. We suppose, therefore, if a party in his defence would avail himself of a fraud in the consideration of a bill or note, though it be but partial, he can only do so, by repudiating the contract altogether, and by offering to restore the entire consideration affected by the fraud.

But still the defendant insists upon another principle ; that waiving all claims for fraud, as such, here has been at least a partial failure of consideration of the note in suit, inasmuch as

the machines patented, the right of using and vending which the defendants bought, could not be purchased in this state, for the price of one hundred and five dollars, each, as the plaintiffs represented; by reason of which, that right was of less value than the stipulated price. The general principle, that a partial failure of consideration, whether the action be for the price of property sold, or upon a bill or note given for such price, may go to reduce the plaintiff's damages in such action, has been fully recognized, and is now well established in this court. *Nichols* v. *Alsop*, 6 *Conn. Rep.* 477. *Cook* & al. v. *Mix*, 11 *Conn. Rep.* 432. *McAlpin* v. *Lee*, ante, *p.* 129. But we do not suppose this principle should be applied to cases such as this; wherein the damage or amount to be deducted from the plaintiff's demand is merely conjectural, unliquidated and incapable of liquidation by known rule. At least, we have seen no case which has extended the application of the rule so far. *Chitty on Bills* 71. 2 *Stark. Ev.* 281. *Bailey on Bills* 344. *Roscoe on Ev.* 168. *Byles on Bills* 65. *Day* & al. v. *Nix*, 9 *J. B. Moore*, 159. 1 *Saund. Pl. & Ev.* 304. *Green* v. *Pratt*, 11 *Conn. Rep.* 205. *McAlpin* v. *Lee*, ante, *p.* 129.

The case above referred to of *Day* & al. v. *Nix*, very well defines our views on this subject. It was an action on a promissory note for 20*l.*, and was given in consideration that the plaintiff would disclose to the defendant his invention or method for improving a twist bobbin machine. On the trial, it appeared, that the plaintiff's invention was in fact an improvement, but of less extent than was anticipated by the parties. And it was holden, that the plaintiff was entitled to recover the whole amount of the note; "as the *quantum* to be deducted, on account of the partial failure of the consideration, is not of definite computation, but of unliquidated damages." So, in the present case, no rule of estimating the damages is given, nor can any be furnished, by the facts in the case. The defendants had purchased a patent-right for a threshing machine for the counties of *Fairfield* and *Litchfield;* and they were induced to purchase, by the representation of the plaintiffs, that the machines themselves could be purchased *in this state* for one hundred and five dollars, each; whereas they could not be bought for a less sum than one hundred and fifty dollars, each. The jury have found, that this difference in the

*New-Haven, July, 1837.*

Pulsifer
*v.*
Hotchkiss.

price of the machines in this state, did not render the right purchased of no value. How much was it worth? In ordinary cases of the sale and purchase of personal estate, witnesses can well enough tell the difference between the stipulated price and the market or actual value. But here it cannot be done. It is evident, that no witness can determine, nor can a jury, how much the right in question would be reduced in value, by this difference in the price of single machines to be manufactured or bought in this state. Perhaps, such machines could be bought in other and adjacent states at the price represented. And indeed, so it appeared on the trial of the cause. How many rights could be sold, if the machines cost 150 dollars each, and at what price, as compared with the number and price of rights which might be sold, if the price of single machines was but 105 dollars? All these, and many other circumstances, of equal uncertainty, must enter into the consideration both of witnesses and triers, before even a conjecture could be formed of the *quantum* which ought to be deducted from the plaintiff's demand.

It is supposed, by the defendants, that the case of *Cook* & al. v. *Mix*, 11 *Conn. Rep.* 432. is opposed to this principle. We think otherwise. If the covenants in that case had been considered as furnishing a consideration of the note in question there, nothing of that uncertainty as to amount or value of the consideration, existed, which is seen here. The rule of damages upon the breach of the covenants of both seisin and warranty, is certain. And besides, the court in that case, in the opinion given, does not allude to this question.

To extend the doctrine of the decided cases on the subject of a partial failure of consideration to facts like the present, is at least unnecessary; and in the absence of all rule of court and legislation requiring notice of defences like this, may be productive, not only of inconvenience, but injury. A great object of all pleading, is, to give reasonable notice to litigants, of all matters of claim or defence, and to furnish perpetual evidence of what has been once determined and settled between them. And it should not be unreasonably required of parties to litigate matters not intimately connected with such as appear of record.

We do not advise a new trial.

The other Judges concurred in this opinion, except BISSELL, J., who was absent when the case was argued, and expressed no opinion.

New trial not to be granted.