## SUMNER *vs.* GRAY.

The vendee of personal property, while he remains in possession, and has not been evicted by paramount title, or, after the property has died, cannot defend against an action for the purchase money, on the ground that the vendor had no title.

The rule of the civil law is the correct one, which is, that if one, *in good faith*, sells and puts another in possession of property, of which he is not the true owner, and his want of title is afterwards discovered, the vendee is not entitled to an action against him, so long as he remains undisturbed in his possession.

This holds good when the seller parts with the property *in good faith*, believing it to be his, which the law presumes, until the contrary is proved; but, if he knew, at the time of sale, that he had no title, an action of *deceit* would necessarily lie for bad faith.

If a purchaser would rescind a contract of sale, and so entitle himself to a return of the money paid, he must put the vendor in the same situation that he was in before the delivery of the article.

To bar a recovery upon the ground of a failure of consideration, the defendant must allege that he obtained no right or interest whatever under the conveyance.

If a vendor fraudulently represents the goods sold to be his own, when he knows them to belong to a stranger, an action on the case lies, to recover damages therefor, though the real owner has not recovered the possession, nor the vendee suffered any actual damage.

The same matter may be admissible by way of defence, for the purpose of reducing or extinguishing the claim to the purchase money.

But where the vendee relies on a warranty of title, express or implied, there must be a *recovery* by the real owner, before an action can be maintained. This is in the nature of an eviction, and the only competent evidence of a breach of the contract.

THIS was an action of assumpsit, tried in the Chicot Circuit Court, in May, 1841, before the Hon. WILLIAM K. SEBASTIAN, one of the Circuit Judges. Gray sued Sumner in assumpsit, on the common counts, for the price of two negro children, sold by the former to the latter. Upon issue on the plea of non-assumpsit, the plaintiff proved that the defendant had stated, some time after June, 1835, that he had purchased of him two negro children, for which he was to give four hundred dollars; that he had taken the negroes home, and had them in his possession; that, early in the year 1836, one of the negroes died, at Sumner's house; that he then said that he had lost a little negro girl, for whom he would not have taken five hundred dollars; and that both the negroes died in his possession, in June or July, 1836.

The defendant then offered to read in evidence an authenticated copy of the will of Benjamin P. Gray, of Missouri, which was exhibited; and the Court refused to allow any evidence that Gray never

had any title to the negroes, other than some record of the recovery of them by title paramount.    The defendant excepted.

. The will purported to have been executed on the 17th of January, A. D. 1834.    By it, the testator bequeathed to his son Martin a girl, named Letta, and to his daughter a girl, named Sophia, and provided that, when his son James (the plaintiff) came of age, he should have the management of the testator's estate.

The jury found for the plaintiff, and the defendant sued his writ of error.

*Trapnall & Cocke,* for the plaintiff in error.    An action may be maintained against the vendor of personal property in possession, who had no title thereto at the time of the sale, without showing a recovery at the suit of another.    In the sale of personal property, the principle of *caveat emptor* does not apply, so far as it relates to the title, but the law raises an implied warranty on the part of the vendor, that he has title to that which he sells.    *Payne vs. Rodden,* 4 *Bibb,* 304.    *Scott vs. Scott's Ex'r.* 2 *Marsh.* 317.

There is a broad distinction in this respect between real and personal estate.    Upon a covenant, on the sale of lands, to warrant and defend the title against the claims of others, an eviction is necessary to show a cause of action; because there is no breach of covenant until an eviction has actually taken place; but, on the sale of personal property, the law raises an implied warranty of title; and, if the vendor has, in fact, no title, the warranty is broken as soon as made, and the right of action instantly accrues.    In this respect, the sale of personal estate is analogous to the case of a covenant by the vendor of real estate, that he has title: in which, if the vendor, in fact, has no title, there is an immediate breach of his covenant, and an eviction is not necessary to enable the vendor to maintain an action upon the covenant.    *Scott vs. Scott's Ex'r.* 2 *Marsh.* 317.    *Medina vs. Stoughton,* 1 *Ld. Raym.* 593.    3 *Mod.* 261.    1 *Show.* 68.    *Cro. Jac.* 474.    3 *T. R.* 57.    1 *Bac. Abr.* 78, *title* (*D*).

*Pike & Baldwin,* contra.    A purchaser, with knowledge that the goods purchased were claimed by a third person, if he voluntarily

pays the price to such third person, cannot afterwards, in a suit brought against him by the vendor for the price, set up the want of title in the vendor, and that he had paid the price to the true owner, as a defence. It is not competent for the vendee to dispute the title of the vendor, unless he has been charged at the suit of another person, who has, after contestation, shown a better title. *Vibbard vs. Johnson,* 19 *J. R.* 78.

Want of title in the vendor of personal property, is no defence to an action brought for the recovery of the purchase money, when there has been no recovery by the owner against the purchaser. *Case vs. Hall & Van Elten,* 24 *Wend.* 102.

The meaning of the axiom of the common law, that, in every sale of personal property, there is an implied warranty of title, is, that when I sell to another, I agree to deliver and defend the possession; and, so long as he enjoys the undisturbed possession, my contract is fulfilled, unless there is ground for an action on the case for deceit.

This is the civil law doctrine. That code holds that the seller is not bound, in strictness, to transfer the *property*, but only to put the buyer in possession, and defend him against all persons. This doctrine is held to be founded in the nature of the contract of sale. *Dig.* 19, 1, 30, § 1. *Pothier, Contr. du vente, by Cushing,* 27, 28, 91, 218.

And this is the only doctrine on which the English cases can be explained, for they only admit an action on the case for want of title, where there was *bad faith,* or *deceit. Medina vs. Stoughton,* 1 *Ld. Raym.* 593. *Cross vs. Gardiner,* 3 *Mod.* 261. 1 *Show.* 68. *Furnis vs. Leicester,* Cro. Jac. 474. *Roswell vs. Vaughan,* Cro. Jac. 196. *Pasley vs. Freeman,* 3 *T. R.* 51. *Bailey vs. Merrell,* 3 *Buls.* 95. *Harvey vs. Young,* Yelv. 21, *a.*

In fact, there is no foundation in these cases, or any where else in the English cases, for the *dictum* so often repeated, that, on a sale of goods, there is an implied warranty of title. The cases only go so far as this, that a direct *affirmation* of title, when the seller *is in possession,* amounts to a warranty; and there is not the slightest hint that this affirmation is a warranty, any further than this, that the vendor will deliver and defend the *possession.*

That an action of *deceit* could be maintained on a *false* and *fraudu-*

*lent* affirmation of title, .does not prove that want of title is a good defence to an action for the consideration money.

If it were a good defence, it would be good ground for rescinding the contract. A contract cannot be rescinded, unless the parties can be put in the same situation in which they stood at the time when the contract was entered into; and, if circumstances have been so altered as to prevent their being put in *statu quo*, the party, who might otherwise have rescinded the contract, will not be allowed to do so. *Hunt vs. Silk*, 5 *East.* 449. *Beed vs. Blanford*, 2 *Y. & J.* 234. *Rand's Long.* 242, 244, 245. *Kimball vs. Cunningham*, 4 *Mass.* 502.

If the party chooses to *rescind*, he must return the property. If he retains it, he may bring an action for deceit, and *this affirms the contract*. *Connor vs. Henderson*, 15 *Mass.* 320. *Curtis vs. Hannay*, 3 *Esp.* 82. *Burton vs. Stewart*, 3 *Wend.* 236. *Miner vs. Bradley*, 22 *Pick.* 457.·

If he has received any benefit from the contract, though less than he expected, he cannot rescind, but the law leaves him to his action. *Boone vs. Eyre*, 1 *H. Bla.* 273, *n. a. Campbell vs. Jones*, 6 *T. R.* 570. *Whitney vs. Lewis*, 21 *Wend.* 131.

The cases quoted from Kentucky are not in point. They were actions by the purchaser against the seller.

*By the Court*, DICKINSON, J.   We have looked into the cases upon this subject with much attention, and can find none precisely in point. The principles, however, which will guide us in this decision, will be found fully sustained in the adjudged common law cases, and expressly decided by the civil law.   The vendor has suffered no eviction in this case. He enjoyed the use and possession of the property, until its destruction. His title had never been disturbed, nor did he claim any indemnity for want of title in the vendor, by action for a deceit. Upon what principle, then, either of equity or justice, can he be permitted to question his vendor's title, after a providential contingency has happened, and deprived him, at once, of the enjoyment and possession of the property? The value of his contract depended upon the happening of this contingency; and both he and the vendor took it into consideration, when the one purchased, and the other sold and

Sumner *vs.* Gray.

delivered, the property. It is too late for him, now, to turn round and say to his vendor, " you had no title." A bill in equity would not lie to rescind the contract, for want of title in the vendor, because it would be wholly impossible to place him in the condition he was when he parted with his property. Why, then, shall the vendee not pay the purchase money, when he has enjoyed all the fruits and benefits arising from the sale? We apprehend the like consequence would follow, if they had remained in his possession, when they should have become useless from service, and he, in the mean time, derived no inconsiderable advantage from their labor. The contract of sale could only last during the lives of the slaves; and this contract he enjoyed to the fullest extent, for that time. We are aware that, in many of the English cases, there is said to be an implied warranty in the sale of a personal chattel. Still that principle, when correctly understood, has no application to the question now before us. We hold the true doctrine in this case, to be the rule laid down by *Pothier,* which is: if one, in good faith, sells, and puts another in possession of, an estate, of which he is not the true owner, and his want of title is afterwards discovered, the vendee is not entitled to an action against the vendor, so long as he remains undisturbed in his possession. This holds good, when the seller parts with the property in good faith, believing it to be his, which the law presumes until the contrary is proved. But if he knew, at the time of the sale, that he had no title, an action of deceit would necessarily lie for bad faith. *Pothier on Contracts,* 27, 28. This principle of the civil law is certainly in accordance with strict justice and moral right; and it is peculiarly applicable to the purchase of slaves, whose value may be increased or lessened by providential circumstances, over which neither party can have any control. If a purchaser would rescind a contract of sale, and so entitle himself to a return of the money paid, he must put the vendor in the same situation that he was in before the delivery of the article. *Kimball vs. Cunningham,* 4 *Mass.* 502. In *Carr vs. Henderson,* 15 *Mass.* 320, it is said that if the vendee does not return the property, or cannot put the party in the same situation, he elects to consider the contract as existing; and, in that case, if he is entitled to any redress, it is by way of damages for its breach. Now it cannot be pretended, that, because

an action will lie for deceit, for want of title, that a vendee, having undisturbed possession, can defend himself against the payment of the purchase money, and at the same time retain the property, and enjoy all the benefits of the sale. If that were the case, the vendor would not only lose the property, but be compelled to pay the price of it to the true owner. The doctrine, therefore, of *Benton vs. Stewart*, 3 *Wend.* 236, and *Minor vs. Bradley*, 22 *Pick.* 457, fully sustains the principle that a purchaser cannot treat the contract as void, if he retain the property. How, then, if he cannot restore the property, can he be exonerated from the purchase money? In *Tallmadge vs. Wallis*, 25 *Wend.* 107, the court held that a plea of want of seizin in the vendor, who had conveyed real estate, with a covenant of seizin, is no bar to an action of debt on a bond given for the purchase money. To bar a recovery, upon the ground of a failure of consideration, the defendant must allege that he obtained no estate or interest whatever under the conveyance. Now if this is true as to personal actions, and as to the sufficiency of a plea questioning the consideration of the contract, it is undeniable that the same principle must govern in regard to the proof of a failure of consideration as to personal property. Does the vendee, in this instance, pretend to prove that he received no estate or interest in the property? Unquestionably not. His own evidence shows that he had an interest, and enjoyed the estate, during its whole continuance. The law will, therefore, hold him bound to pay the purchase money.

If a vendor fraudulently represents the goods sold to be his own, when he knows them to belong to a stranger, an action on the case lies to recover damages therefor, though the real owner has not recovered the possession, nor the vendee suffered any actual damage. 1 *Show.* 68. *Sell. N. P.* 482. The same matter may be admissible, by way of defence, for the purpose of reducing or extinguishing the claim to the purchase money. See 15 *J. R.* 250. 24 *Wend.* 102. Where, however, the vendee relies on the warranty of title, express or implied, there must be a recovery by the real owner, before an action can be maintained. This is in the nature of an eviction, and is the only evidence of the breach of the contract, in analogy to the case of covenant real, and is so expressly ruled in *Case vs. Hall*, 24

*Wend.* 102. It would be unjust to permit the vendee to retain possession, and enjoy the use of the property, and put his vendor at defiance. Possibly his title and possession may never be disturbed, or the seller might perhaps quiet it. The breach implies no bad faith, and is, therefore, compatible with perfect fair dealing between the parties.

Judgment affirmed.