MEYER, WILSON & CO. v. EVERETT PULP & PAPER CO.

(Circuit Court, W. D. Washington, N. D. January 26, 1911.)

1. SALES (§ 271*)—SAMPLE—QUALITY—IMPLIED WARRANTY.
    On a sale by sample, there is an implied warranty of quality.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 769–771; Dec. Dig. § 271.*]

2. SALES (§ 428*)—QUALITY—IMPLIED WARRANTY—RIGHTS OF BUYER.
    Breach of an implied warranty of quality authorizes the buyer to retain the goods, and, when sued for the price, to set up the breach of warranty, to reduce the sum recoverable by the seller. ·
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223; Dec. Dig. § 428.*]

3. SALES (§ 442*)—WARRANTY OF QUALITY—BREACH—DAMAGES.
    The measure of damages for breach of an implied warranty of quality is the difference between the actual value of the property delivered and the higher value of the warranted quality; and, if there is no evidence of value, the price agreed to be paid will be regarded as the value of the property warranted.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. § 442.*]

4. SALES (§ 428*)—IMPLIED WARRANTY—DAMAGES—RECOUPMENT.
    Where defendant purchased china clay by sample, and a portion of the clay was not equal to the sample, whereupon defendant offered to return such portion, and to hold it subject to plaintiff's disposition, defendant was entitled to recoup the contract price of the portion rejected, as its measure of damages, when sued for the contract price of the entire consignment.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223; Dec. Dig. § 428.*]

At Law. Action by Meyer, Wilson & Co. against the Everett Pulp & Paper Company to recover the price of certain china clay delivered pursuant to an executory contract of sale by sample. Findings for defendant for breach of an implied warranty of quality.

Williams, Wood & Linthicum, Isaac D. Hunt, and Peters & Powell, for plaintiff.

F. H. Brownell, for defendant.

HANFORD, District Judge. This is an action at law, tried by the court; a jury trial having been waived. The action is to collect the price of 400 tons of china clay sold and delivered by the plaintiffs to the defendant. The contract for the sale of the clay was made by correspondence between the parties, and, as construed by the court, it is a contract for a sale by sample, and there is an implied warranty of quality corresponding to the sample referred to in the correspondence. 15 Am. & Eng. Enc. of Law (2d Ed.) pp. 1225, 1226. The clay was bought in England, and transported by ship to Seattle, and there is no dispute between the parties as to the quantity of the clay shipped and delivered, nor as to the contract price which the defendant promised to pay therefor. It is admitted, also, that payment of the purchase price has been demanded and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

refused, except as to part, and other jurisdictional facts are admitted.

The contract, as construed by the court, obligated the defendant to receive the clay from the ship, which condition precluded inspection by the purchaser before delivery: This is so for the reason that clay, to be of the quality warranted, must be of uniform white color and free from grit; and to determine the quality, time, favorable conditions, and special conveniences for testing are necessary, and these essentials make a fair inspection while the ship is being discharged impracticable. The defendant did not in fact inspect the clay to ascertain its quality before receiving it, but afterwards ascertained that it came from two different sources of supply, and that it is not uniform in quality; 800 barrels thereof being inferior to the sample and unsuitable for the defendant's use. The defendant used, and has tendered payment at the contract rate for, 861 barrels, and disputes its liability to pay for 800 barrels because of the inferior quality thereof.

The plaintiff's contention is that, notwithstanding the inferior quality of 800 barrels of the clay, the defendant accepted delivery of the entire consignment, and by doing so waived its right to reject any part of the same. The defendant did not intend a waiver of its right to have delivered that which it had agreed to buy and pay for, viz., clay of the same quality as the sample. On the contrary, it was prompt in giving notice to the plaintiffs of the inferior quality of the clay, and has acted fairly towards them in minimizing the loss by making use of, and tendering payment for, all of the clay fit for use, and by holding the rejected portion subject to the plaintiff's right to dispose of it.

The plaintiff's contention is founded upon the false idea that the defendant was legally bound to either accept the commodity of which delivery was tendered, and pay the contract price for all of it, regardless of its quality, or else refuse to receive possession of it. This idea is contrary to the rule of law applicable to the case, because it ignores the implied warranty upon which the defendant had a right to rely. The defendant acted within its legal rights in taking possession of the clay and resisting the plaintiff's demand for the price of the portion inferior to the sample. In this country the rule is well established, by numerous decisions of the courts, that a breach of an implied warranty of quality entitles the vendee to retain the goods, and, when sued for the purchase price, to set up the breach of warranty to reduce the sum recoverable by the vendor. 15 Am. & Eng. Enc. of Law (2d Ed.) p. 1255; 24 Id. p. 1158; Saunders v. Short, 86 Fed. 225, 30 C. C. A. 462; Andrews v. Schreiber (C. C.) 93 Fed. 367; Florence Oil & Refining Co. v. Farrar, 109 Fed. 254, 48 C. C. A. 345.

The measure of damages which the vendee may claim for breach of an implied warranty of quality is the difference between the actual value of the property delivered and the higher value of the warranted quality; and if there is no other evidence of value, the price agreed to be paid will be regarded as the value of the property

of the quality warranted. In this case, the defendant having offered to return the inferior clay and to hold it subject to disposition by the plaintiffs, the contract price is the measure of damages which it is entitled to recoup.

The court directs that findings be prepared in accordance with this opinion, and the judgment to be entered will be that the plaintiffs take nothing, save and except the amount of money deposited in the registry of the court by the defendant, and that the defendant recover the taxable costs occasioned by the litigation subsequent to the making of said deposit.